UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
BOSTON DIVISION

ALANA WALDHOLZ INDIVIDUALLY
AND AS NATRUAL PARENT AND NEXT
FRIEND OF D. ROBINSON,
J. OLIVER AND J.MCCLANAHAN,
     Plaintiffs

v.                                                                    DOCKET NO. 09CV10375

WILSHIRE CREDIT CORPORATION AS
ATTORNEY IN FACT FOR LASALLE
BANK N.A., AS TRUSTEE FOR THE MLMI
TRUST SERIES 2006-MLN1
     Defendants

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
TO VACATE ORDER

1.     Plaintiffs hereby respectfully move this honorable Court to deny Defendants' Motion

to vacate as the Defendants' Motion does not present sufficient facts or argument to justify

the relief requested under F.R.C.P 60.

RELEVANT FACTS

2.     As of this date, Plaintiffs' have legal possession with the right to occupy 11 Roxton

Street, Unit 1, Dorchester MA (the "unit") and have not fully vacated the unit.

3.      As of this date, Defendants are in Contempt of a Preliminary Injunction Order (the

"Order") directing Defendants to "restore heat, water and electricity to Unit 1 at 11 Roxton

Street, Dorchester MA within 10 days." A copy of that Order is attached as Exhibit A.

4.      Further, Plaintiffs, for the sake of this Motion only, do no contest the "background"

as presented in the Defendants' Motion, except for the following:

> In paragraph 13 of Defendants' Motion they correctly state that Inspector Moxley of
>
> the City of Boston Inspectional Services Department requested an affidavit from a
>
> registered certified Massachusetts structural engineer regarding the structural
>
> adequacy of the building. however in paragraph 14 Defendants state "on information
>
> and belief, as of the date of this motion, ISD has not received such an affidavit."

5.      At the hearing in Boston Housing Court on February 20, 2009 that resulted in the

Order in question, Defendants' attorney Christopher J. DeCosta called Inspector Moxley to

the witness stand and entered the inspection report into evidence, a copy of which is attached

to Defendants' Motion as Affidavit, Exhibit E. What Defendants neglect to tell this Court is

that Inspector Moxley testified that he had received the report of a registered certified

Massachusetts structural engineer and that the City was satisfied with that report and that the

City was not pursuing any further action based on the structural adequacy of the building.

The report was then accepted into evidence at the hearing and Defendants were provided a

copy. This report was written by Arthur Choo based on an inspection he conducted one day

after Inspector Moxley requested the registered certified Massachusetts structural engineer on

January 29, 2009. (Exhibit B) Further the Defendants' attorney Erin Birmingham was present

both at the property with Arthur Choo and at the hearing when Inspector Moxley testified.

## GROUNDS IN SUPPORT OF THIS OPPOSITION

### *Lack of Jurisdiction*

6.      This Court lacks the jurisdictional over this case and as such lacks jurisdiction to set aside a valid State Court Judgment pursuant to Fed. R. Civ. P. 60(b).   There is a Motion pending before this Court to remand this case to State Court which outlines with particularity the basis for the lack of Jurisdiction in Federal Court. Please incorporate by reference the arguments more fully set forth in the Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion to Remand. (Doc. No. 16).

### *Defendant has not met his burden to justify such relief*

### *Plaintiff is vacating unit 1*

7.      Assuming, *arguendo*, that this Court has the jurisdiction over this case and over Defendants' request to set aside a valid State Court Judgment pursuant to Fed. R. Civ. P. 60(b), Defendants have completely failed to meet their heavy burden to justify such extraordinary relief.

8.      Defendants' first attempt to justify vacating the order is based on the fact that they were informed on March 16, 2009 that the Plaintiffs hoped to vacate within the following three weeks. Defendants allege that this is "new evidence" that comes within the authority of Fed. R. Civ. P. 60(b)(2) and justifies the Defendants' request to vacate the order.  Fed. R. Civ. P. 60(b)(2) provides that "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons...newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under <u>Rule 59(b)</u>;".

9.    The Defendants are fundamentally wrong in citing this section for this "new evidence" as it does not fall within the purview of F.R.C.P 60(b)(2) and further that even if it had, it is not sufficient evidence to justify vacating the order.   The plain language of this rule requires that "new evidence" must be evidence that with reasonable diligence *could not have been discovered in time to move for a new trial under Rule 59(b)*.   Rule 59(b) provides ten days to move for a new trial.  The Defendants discovered this "new evidence" five days after the order, therefore, by definition they do not comply with the plain language of Rule 60(b)(2).

10.    Also, newly discovered evidence is evidence discovered since the trial which was also in existence at the time of the trial. *Morgan v. Labiak*, 368 F.2d 338 (10th Cir. 1966); U.S. v. Bransen, 142 F.2d 232 (C.C.A. 9th Cir. 1944).  Newly discovered evidence does not include facts occurring subsequent to the trial. *Campbell v. American Foreign S.S.* 116 F.2d 926 (C.C.A. 2d Cir. 1941);  The trial occurred on February 20, 2009.  The "new evidence" the Defendant cites occurred long after this trial thereby excluding them from rule 60(b)(2).

11.    Defendants' second attempt to justify vacating the order is based on the same "new evidence" cited above but this time citing Fed. R. Civ. P. 60(b)(6) as justification.  Fed. R. Civ. P. 60(b)(6) provides that "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons…any other reason that justifies relief." This seemingly broad language is the same as the State Court rule and has consistently been limited by both the State and Federal Courts to apply only under extraordinary circumstances. *See Ackerson v. United States*, 340 U.S. 193, (1950). The Supreme Judicial Court has imposed similar restrictions on the rule. *See* B*romfield v. Commonwealth*, 400 Mass. 254, 257 (1987); *see also* W*inthrop Corporation v.*

*Lowenthal*, 29 Mass. App. Ct. 180, 188 (1990) (the operation of Rule 60(b)(6) must receive

"extremely meagre scope" and "requires compelling or extraordinary circumstances");

*Bowers v. Bd. of Appeals of Marshfield*, 16 Mass. App. Ct. 29, 33 (1983).  Relief under Rule

60(b) must be granted only sparingly and under exceptional circumstances. *Karak v. Bursaw*

*Oil Corp.*, 288 F.3d 15, 19 (1st Cir. 2002); *Lepore v. Vidockler*, 792 F.2d 272, 274 (1st Cir.

1986).

> "A party who seeks recourse under Rule 60(b) must persuade the trial court, at a bare minimum, that his motion is timely; that exceptional circumstances exist, favoring extraordinary relief; that if the judgment is set aside, he has the right stuff to mount a potentially meritorious claim or defense; and that no unfair prejudice will accrue to the opposing parties should the motion be granted." *Karak*, 288 F.3d at 19.

12.      Defendants do not claim, much less show, exceptional circumstances that merit the

relief they seek. Here, the Defendants claim that "since the underlying reason for the Order –

i.e., allowing the Plaintiff to return to Unit 1 to live – no longer exists, the Court should

vacate the Order."   The Defendants simply fabricate this "underlying reason " for the

housing court Order.  The Order doesn't mention the Plaintiff returning to the unit.  While

that is not an unreasonable assumption, it is completely unreasonable to state that it is the

entire underlying reason for the order. The Order is strictly construed in accordance with

established Massachusetts landlord/tenant statutory and case law.  The Order's concise

language states its reason for the order as follows: "The Defendant in this case is the owner

of the Premises and the Plaintiff has the right to occupy the Premises unless and until there is

a court order directing her to vacate. *Until that time, the Defendant has the obligation to*

*provide housing that meets the mandates of the state sanitary code.*  It cannot hide behind the

Condominium documents to avoid its obligations. " [emphasis added] As of this date, the

Plaintiff has not relinquished her occupancy of the unit.  While her intention is not in dispute,

and she is hopeful to fully vacate the premises shortly, there are any number of factors that could arise that could prevent that from happening as timely as is wished for. The Plaintiff is a destitute single mother of three with no appreciable income and it is not without great difficulty that she will fully vacate this unit. To reverse the Order because the Plaintiffs may vacate sometime in the future is contrary to logic and would set a precedent for future unscrupulous landlords to just simply delay as long as possible because ultimately people need a place to live and will one day move. The Defendants were ordered to restore the heat, water, and electricity to the Plaintiffs' apartment within ten days. The Plaintiffs' apartment has not had any utilities since December 12, 2008 and to date the Defendants have not complied with the Order.

13.     The Plaintiffs plan to vacate this unit, not because they don't want to live there, but rather because the Defendants have grossly breached their legal obligations as landlord and further continually breach direct orders of the court. Plaintiffs are being forced to vacate directly as a result of the Defendants.

14.     Therefore, based on the argument above, the Defendants have not presented a compelling or extraordinary circumstances as the case law requires and further in accordance with case law outlined above this section of 60(b)(6) must be given an extremely meagre scope and the order should not be vacated.

### The building has not been deemed structurally adequate

15.     The Defendants made a third attempt in their Motion to justify vacating the order. This last attempt was also brought under the same "catch all" provision of rule 60(b)(6) cited above. "A district court will grant a Rule 60(b)(6) motion only if it finds 'exceptional' circumstances that justify 'extraordinary' relief." *Valley Citizens for a Safe Environment v.*

*Aldridge,* 969 F.2d 1315, 1317 (1st Cir. 1992). Such a standard is considered a high bar for any movant to meet. *See Paul Revere Variable Annuity Ins. Co. v. Zang,* 248 F.3d 1, 5-6 (1st Cir. 2001).

16.     In an attempt to meet this standard, the Defendants claim that the building has not been deemed structurally adequate and further claim "the structural integrity of the Building is in question" and therefore the Court should vacate the Order. Defendants present no different argument or new evidence from what was argued at the Housing Court hearing and further, the Defendants do not cite a single case in support of its Motion that would require this Court to reconsider the Housing Court Order. Instead, Defendants merely assert once again the same argument presented to the Housing Court. Defendants' Motion should be denied because Defendants' have already raised these identical arguments and the Housing Court found against them.

17.     A rule 60(b)(6) Motion is not an opportunity to repeat old arguments previously considered and rejected. Arguments which were fully considered and rejected by the court the first time should not be considered when repeated by counsel in a Motion under F.R.C.P. 60(b). The First Circuit reached the same conclusion in *Council for Employment and Economic Energy Use v. WHDH Corporation et al,* 580 F. 2d 9, 13 (1st Cir. 1978) where it held that "a Fed. R. Civ. P. 60(b) motion is not a substitute for the normal appeal procedure and is not a means for the mere reconsideration of a litigant's previously existing case".

18.     In the present case, there has been no significant change in the law and the Defendants are merely rehashing their previously made arguments. Defendants have failed to identify anything that would meet the "exceptional circumstances" requirement for 60(b)(6) consideration.

***Plaintiffs are entitled to all costs, expenses and attorneys fees reasonably
Incurred deal Defendants' Motion to Vacate***

19.     Title 28 U.S.C. s. 1927 provides: "Any attorney … who so multiplies the proceedings
in any case unreasonably and vexatiously may be required by the court to satisfy personally
the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

20.     The intent of Title 28 U.S.C. § 1927 is to eliminate flagrant abuses of the litigation
process. *E.E.O.C. v. Tandem Computers Inc.,* 158 F.R.D. 224, *227 (D.Mass.1994).  The
First Circuit does not require a finding of subjective bad faith in order to impose sanctions
pursuant to § 1927. *Cruz,* 896 F.2d at 632. Rather, under the statute, sanctions are deemed to
be appropriate when, from an objective standpoint, counsel's conduct has multiplied the
proceedings and, in doing so, has been unreasonable and vexatious, in the sense of being
harassing or annoying. *Id.* The questioned conduct must "be more severe than mere
negligence, inadvertence or incompetence."

21.     The Defendants Motion To Vacate as outlined above is not grounded in any
reasonable arguments of law and further does not cite a single case in support of its
conclusions and therefore, Plaintiffs are entitled to all excess costs, expense and/or attorneys
fees reasonably incurred in opposing their Motion.

CONCLUSION

22.     Therefore, based on the argument above, the Defendants' Motion to Vacate should be
denied.

Dated April 7, 2009

Respectfully submitted,
Plaintiffs,
By their Attorneys,

Vining Law Office, LLC

Edward Rice
Volunteer Lawyers Project
99 Chauncy Street #400
Boston, MA 021112
617.423.0648
erice@vlpnet.org
BBO# 617513

Kenneth C. Vining, Esq.
Vining Law Office, LLC
761 Broadway
Somerville, MA 02144
617.666.0303
Ken@vininglawoffice.com
BBO# 645037

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
BOSTON DIVISION

ALANA WALDHOLZ INDIVIDUALLY
AND AS NATRUAL PARENT AND NEXT
FRIEND OF DOMENIK ROBINSON,
JA-SHON OLIVER AND JA-ROD
MCCLANAHAN,
     Plaintiffs

v.                                     DOCKET NO. 09CV10375

WILSHIRE CREDIT CORPORATION AS
ATTORNEY IN FACT FOR LASALLE
BANK N.A., AS TRUSTEE FOR THE MLMI
TRUST SERIES 2006-MLN1
     Defendants

CERTIFICATE OF SERVICE

I, Attorney Edward Rice, hereby certify that I served a copy of the following documents:

1.    PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
     TO VACATE ORDER

upon counsel for the Defendant,  Richard C. Demerle, Esq. Michienzie & Sawin, LLC 745
Boylston Street Boston MA 02116 via electronic mail and US mail on April 3, 2009.

Dated: April 3, 2009

Plaintiffs,
By their Attorneys,

Edward Rice   BBO# 617513
Volunteer Lawyers Project
99 Chauncy Street #400
Boston, MA 021112
617.423.0648
erice@vlpnet.org

Kenneth C. Vining, Esq. BBO# 645037
Vining Law Office, LLC
761 Broadway
Somerville, MA 02144
617.666.0303
Ken@vininglawoffice.com

EXHIBIT A

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS

HOUSING COURT DEPARTMENT
CITY OF BOSTON DIVISION
CIVIL ACTION
NO. **09H84CV000017**

**ALANA WALDHOLZ**
Plaintiff

VS

**LASALLE BANK, NA AS TRUSTEE
FOR MLMI TRUST SERIES 2006 -
MLNI AS SERVICED BY WILSHIRE
CREDIT CORPORATION**
Defendant

**PRELIMINARY INJUNCTION ORDER**

This matter was before the Court on February 20, 2009 for an evidentiary hearing with

respect to the issuance of further injunctive relief pursuant to the Plaintiff's application dated

January 7, 2009. For the reasons set forth herein, further injunctive relief is **ALLOWED** and a

preliminary injunction shall issue as set forth herein.

The case was commenced on January 8, 2009 when the Plaintiff filed an Application for

Temporary Restraining Order. Both parties were present and represented by counsel. The

Plaintiff, in her affidavit, represented to the Court that she lived at Unit 1, 11 Roxton Street in

Dorchester (the "Premises") and had been without heat, water or electricity at the Premises for a

period of time. The Plaintiff represented that she had asked the Defendant to make the repairs to

no avail. At the hearing, the Court was informed that there had been a fire at the building and the

heat, water and electricity were turned off as a result of the fire. There was some confusion with

regard to whether the property could be occupied by the Defendant and the matter was continued for further hearing on January 12, 2009.

As a result of the hearing on January 12, 2009, the Court (Muirhead, J.) entered a Temporary Restraining Order requiring the Defendant to restore heat, water and electricity to the Premises to secure the front door, refrain from interfering with the Plaintiff's quiet enjoyment and to house the Plaintiff in a hotel until the heat, water and electricity were restored. On January 13, 2009, the parties reported to the Court that the Defendant declined to be housed in a hotel and preferred to remain in a shelter until the Premises could be restored.

As a result of a hearing on January 23, 2009 and the Plaintiff's refusal to be housed in a hotel, the Court vacated so much of the January 12, 2009 order as required the Defendant to house the Plaintiff in a hotel and scheduled an evidentiary hearing to determine whether a preliminary injunction should issue. That hearing was held on February 20, 2009[1].

Throughout several status hearings, the Defendant reported that it was unable to effectuate repairs because the property was a condominium. In addition, to comply with the order, the Defendant would be required to repair common facilities even if the Defendant could make the repairs to restore services, the cost was prohibitive[2]. Finally the Defendant asserted that the Plaintiff had abandoned the Premises.

---

[1] On February 20,2009, the Defendants submitted a document entitled "Memorandum of Law in Opposition to Entry of Preliminary Injunction" which had nineteen exhibits appended thereto. The Plaintiff opposes the consideration of these documents as evidence. Although the Defendant was given the opportunity to present witnesses and introduce exhibits at the hearing, only one of the nineteen exhibits appended to the Defendant's Memorandum was introduced as evidence at the hearing -- Exhibit "5" a Notice to Quit dated December 8, 2008 from Counsel for the Defendant to the Plaintiff. None of the other documents appended to the Defendant's will be considered by the Court as evidence in this matter.

[2] The only support for this contention was the testimony of a contractor based in New Jersey who had never inspected the property.

At the evidentiary hearing on February 20, 2009, the parties stipulated that the Premises are owned by LaSalle Bank, NA as trustee for MLMI Trust Series 2006 - MLNI as serviced by Wilshire Credit Corporation.  There is no dispute that there was a fire in Unit 3 at 11 Roxton Street in Dorchester and as a result, the heat, water and electricity to the entire building were terminated.

The underlying action is one is one commenced pursuant to G.L. c. 111 sec. 127C[3], which provides in relevant part that

> [i]f the condition of any building or any part thereof used for residential purposes is in violation of the standards of fitness for human habitation established under the state sanitary code, as provided by section one hundred and twenty-seven A . . . a petition may be filed by any affected tenant . . . in a . . . housing court . . . .

A petitioner need not state that the premises have been found by an appropriate inspection agency to be in violation of any such standards, if the petition sets forth, *inter alia*, facts sufficient to demonstrate a likely violation of the state sanitary code which may endanger or materially impair the health or well-being of any tenant in the building or premises occupied by such tenant.

The Defendant maintains that the Plaintiff is, at best, a tenant at sufferance, her tenancy having been terminated by a Notice to Quit (Exhibit "5")[4], which the parties have stipulated  was served on the Plaintiff on or about December 8, 2008, four days before the fire.  Accepting this as true, a tenant at sufferance is a tenant of sort and the defense of breach of warranty of habitability

---

[3]There is no issue of rent in this matter, nor is there any allegation that the Plaintiff caused the conditions of which she complains.

[4]To the extent that the Defendant asserts that a Notice to Quit dated July 28, 2008 addressed to "Jane Doe" affected the Defendant's right to occupy the Premises, that argument must fail.  See *Vargas v. Banker's Trust* 95-CV-000049 (Kerman, J. January 31, 1997)

3

would be available to her in a summary process action pursuant to G.L. c. 239 sec. 8A. It stands

to reason that the Plaintiff has the right to bring an action to enforce the sanitary code by bringing

an action for injunctive relief.

There is no dispute that there are violations of the state sanitary code at the Premises.

The parties stipulated that as a result of a condemnation hearing conducted by the City of Boston

Inspectional Services Department ("ISD") on February 17, 2009, the Premises were determined

to be unfit for human habitation. (Exhibit "1"). The Court notes that the condemnation hearing

was not held until February 17, 2009, more than one month after the Court issued its original

order in this case.

The parties further stipulated that on January 22, 2009, ISD issued two orders of

abatement to the Defendant. (Exhibits "2" and "3").[5] The first order was determined to

constitute an emergency and the Defendant was ordered to repair or replace smoke detectors, and

remove the snow and ice from the walkways within twenty-four hours. (Exhibit "2"). The

second abatement order directed the Defendant to repair the water damage to the Premises and

restore it to its original state within thirty days. (Exhibit "3"). The parties also stipulated to the

inspector's notes from an inspection on January 22, 2009 at which time the inspector noted that

there was no electricity at the Premises, there was no water and the pipes were frozen, there was

no heat because the heating system had been "taken apart," and there was a strong odor of

mildew. (Exhibit "4"). The inspector further noted water damage, particularly in the master

---

[5]There is no evidence that the abatement orders were ever served on the Defendant, but because the parties stipulated to the documents, the Court concludes that the Defendant was aware of the abatement orders on or about January 22, 2009.

4

bedroom and that the first floor common area was missing smoke detectors. (Exhibit "4")[6]

The only disputed issue with regard to the Plaintiff's likelihood of success on the merits is the issue of the Defendant's responsibility to repair the code violations. The Defendant maintains that it is not responsible for the repairs because the Premises are part of a condominium and the heat, electricity and water are common facilities. The Defendant further argues that there is a hole in the roof in Unit 3 and the Defendant because he has no interest in Unit 3, cannot repair the hole.

As a general rule, the organization of unit owners is responsible for the repair, replacement and maintenance of the common areas and facilities. However, G.L. c. 183A, sec. 5(f) provides, in relevant part, that "whenever the common areas and facilities shall require emergency works of repair, replacement or maintenance, any unit owner may undertake the same at his expense and recover his reasonable costs as a common expense." The Court finds that the lack of heat, water and electricity constitutes an emergency and the Defendant has the statutory right to undertake the repairs to the common facilities necessary to correct the emergency.

In addition to the rights granted by statute, the Defendant had other avenues available to it to provide heat, water and electricity to the Premises. The Defendant had the right to request that the organization of unit owners use its reserve funds to complete whatever repairs were necessary to restore the heat, hot water and electricity to the Premises, to propose an increase in regular monthly common charge assessments, or a special assessment, to acquire the funds to restore the heat, hot water and electricity or to explore the possibility of obtaining a loan from a bank. The

---

[6]Exhibit "4" also contains other notations which are not explained by the inspector and which the Court is not in a position to interpret."

Defendant failed to explore these options. Sirwel Cox one of the owners of Unit 3, where the fire occurred, testified that there has not been a meeting of the organization of unit owners at 11 Roxton Street to discuss repairs and no unit owner, including the Defendant has requested such a meeting. The Court credits Mr. Cox's testimony.

The Defendant also had the right to move to join the other unit owners, as defendants in this case or as third-party defendants, one of which is another financial institution, as parties to this case or bring a separate action against the other unit owners and/or the organization of unit owners to begin the repairs. All else failing, the Defendant had the right to seek to have a receiver appointed, pursuant to G.L. c. 111 sec. 127I.

The Court finds that Defendant has failed to take any step to restore the heat, water and electricity to the Premises.

The Defendant has submitted no evidence, testimonial or otherwise, that the cost of restoration of the Premises is prohibitive and given the avenues available to the Defendant to achieve the repairs, it is not likely that such evidence is forthcoming.

The Defendant in this case is the owner of the Premises and the Plaintiff has the right to occupy the Premises, unless and until there is a court order directing her to vacate. Until that time, the Defendant has the obligation to provide housing that meets the mandates of the state sanitary code. It can not hide behind the condominium documents to avoid its obligations.

Accordingly, pending a trial on the merits, it is **ORDERED** that the Defendant:

1.      is hereby restrained and enjoined from failing to restore heat, water and electricity to Unit 1 at 11 Roxton Street, Dorchester, MA and

2.    restore heat, water and electricity to Unit 1 at 11 Roxton Street, Dorchester, MA

within 10 days of the date of this order.

**SO ORDERED**.

_____

**MARYLOU MUIRHEAD**
**ASSOCIATE JUSTICE**

March 11, 2009


cc:    Edward Rice, Esquire
       Erin Birmingham, Esquire

7

EXHIBIT B

FOR MS. ALANA WALDHOLZ.



# ARTHUR CHOO ASSOCIATES INC., CONSULTING ENGINEERS
## ONE BILLINGS ROAD, QUINCY, MASSACHUSETTS 02171

OFFICE (617) 328-3320                                       FAX (617) 786-7715

Jan. 30, 2009.

Ed Rice ESQ.,
Volunteer Lawyers Project,
99 Chauncy Street, Suite 400,
Boston, MA. 02111.

Re:    No. 11 Roxton Street, Dorchester, MA.

Dear Mr. Rice,

On Friday, January 30, 2009, I inspected No. 11 Roxton Street in Dorchester, Massachusetts.   The purpose of the inspection was to determine the damage to the building due to a recent fire.

No. 11 Roxton Street is a three story wood framed building on stone foundation walls.   The building is approximately twenty nine feet wide by fifty eight feet deep.   There are three units in the building, one on each floor.   There is an unfinished basement in the building.

The floors are built with 2" x 8's" at 16" on centers spanning from an exterior wall to a bearing partition  and then on to the opposite exterior wall.   The exterior walls are bearing on stone foundation walls.   The interior bearing partition is supported by a wood beam on the first floor.   The wood beam is stupported by 3 1/2" diameter steel columns at approximately 7'-0" on centers in the basement.

The fire was contained in one room on the third floor.   The room is a bedroom next to the kitchen.   The wall boards on the exterior wall in this room and the wall separating the kitchen from the bedroom were destroyed to inspect the damage caused by the fire.   A few of the roof rafters were removed.   A large hole in the roof was covered up with plywood to protect the house from the elements.   The ceiling boards in this room were removed.   The roof insulation under the roof and in the exterior wall were removed.   The finished hard wood flooring in this room has bucklered due to water.   The sub floor may also be damaged. The floor joists are probably undamaged.

All the windows on the third floor are broken.   Some of the wood frames in the windows are missing.   All the windows and frames will have to be replaced.

The entire third floor requires a fresh coat of paint.

A new roof will be required.

2.



# ARTHUR CHOO ASSOCIATES INC., CONSULTING ENGINEERS
## ONE BILLINGS ROAD,   QUINCY,   MASSACHUSETTS 02171
OFFICE (617) 328-3320                                          FAX (617) 786-7715

    The fire did not damage the building structurally.   It is structurally safe.   When the third floor, the roof and the walls are repaired the building will be structurally sound.

    The building will support a live load of 40 pounds per square foot plus twenty pounds per square foot partition allowance and fourteen pounds per square foot dead load as prescribed by the Massachusetts Building Code.

Very truly yours,

Arthur Choo Associates Inc.,

*Arthur Choo P.E.*

Arthur Choo PE
AC:cs.

